GERBER, J.,
dissenting.
I respectfully dissent. Competent, substantial evidence exists to satisfy our supreme court’s three-prong test for determining when a confinement, alleged to have been done to facilitate the commission of another crime, amounts to a kidnapping. We should affirm the kidnapping conviction in this case, and should recede en banc from certain rules which this court issued in Lewis v. State, 50 So.3d 86 (Fla. 4th DCA 2010).
In Faison v. State, 426 So.2d 963 (Fla.1983), our supreme court held:
[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Id. at 965 (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)).
*548 The supreme court applied Faison’s three-prong test to a robbery situation in Berry v. State, 668 So.2d 967 (Fla.1996). There, the defendant and others entered a man’s apartment and robbed him and his friend at gunpoint. The robbers tied up the friend’s hands and feet and made him kneel over a chair. Meanwhile, the robbers forced the man who lived in the apartment to walk from room to room to show them where valuable items were located. After the robbers finished removing items from the apartment, one of them tied up that man’s hands and legs, leaving him face down on the floor. The robbers then left the apartment without untying the men. One of the men freed himself and, after leaving the apartment to call the police, returned and untied the other man.
The defendant was convicted of armed robbery and kidnapping. This court affirmed the kidnapping conviction. The supreme court approved our decision after applying the three-prong test. Important here is the supreme court’s detailed reasoning:
Applying the first prong of the Faison test to the facts of the instant case, we do not believe that the confinement was slight, inconsequential, and merely incidental to the other crime. We construe this prong to mean that there can be no kidnapping where the only confinement involved is the sort that, though not necessary to the underlying felony, is likely to naturally accompany it. For example, if [the robbers] had confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction could not stand. In both hypothetical, any confinement accompanying the robbery would cease naturally with the robbery. By contrast, in this case the robbers left the scene of the robbery without untying the victims, thereby leaving them both in a precarious and vulnerable state for a period beyond the robbery. Like the situation where the victim of a forcible felony is barricaded or locked in a room or closet, the confinement continued even after the robbery had ceased. This is not the sort of confinement that is incidental to robbery.
The binding of the victims also satisfies the second prong of Faison. We conclude that the confinement was not of a sort inherent in a robbery because it was not necessary to tie up the victims in order to commit the robbery. Indeed, [the defendant] would have been convicted of robbery even in the absence of evidence that the victims had been tied up.
With respect to the third prong of Faison, it is clear that the binding of the victims was a confinement with independent significance from the underlying felony in that it substantially reduced the risk of detection. We cannot see why [the robbers] left the apartment with the victims still bound, if not for the purpose of making a clean getaway. The fact that [one victim] freed himself shortly after the robbers left does not negate this finding as to his confinement. As we stated in Ferguson v. State, 533 So.2d 763, 764 (Fla.1988),

the determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose. The question is whether the initial confinement was intended to further either of these objectives.

668 So.2d at 969-70 (emphasis added).
Berry’s prong-by-prong analysis applies equally here. Applying Faison’s first *549 prong to the instant case, the confinement accompanying the robbery here was not slight, inconsequential, and merely incidental to the robbery. That is because the confinement did not cease “naturally” with the robbery. Id. at 969. Rather, the confinement ceased “unnaturally” because the victim’s sister and her friend, and then the police, interrupted the robbers, causing them to untie the victim and take the pillow case off his head.
The binding of the victim and the covering of his head also satisfies Faison’s second prong. The confinement was not of a sort inherent in a robbery because it was not necessary to tie up the victim and put a pillow case over his head to commit the robbery. Indeed, the defendant would have been convicted of robbery even in the absence of this evidence.
Regarding Faison’s third prong, it is clear that the binding of the victim and the covering of his head was a confinement with independent significance from the robbery in that it made the robbery substantially easier of commission and substantially lessened the risk of detection. The fact that the victim’s sister and her friend, and then the police, interrupted the robbers, causing them to untie the victim and take the pillow case off his head, does not negate this finding as to the robbers’ intent for the initial confinement. As the court stated in Berry: ‘“The question is whether the initial confinement was intended to [make the other crime substantially easier of commission or substantially lessens the risk of detection].’ ” 668 So.2d at 970 (quoting Ferguson, 533 So.2d at 764) (emphasis added). “[T]he success of the confinement is not an integral part of the test.” Berry, 668 So.2d at 970 (emphasis added).
The majority in this case attempts to characterize Berry as “seem[ing] to indicate that whether the victim remains confined after the completion of the underlying crime can suggest whether the first and third prongs of the Faison test have been satisfied.” Respectfully, I see no such indication in Berry. In fact, Berry’s discussion of the third prong appears to have held to the contrary: “The question is whether the initial confinement was intended to [make the other crime substantially easier of commission or substantially lessens the risk of detection].” Id. at 970 (quoting Ferguson, 533 So.2d at 764) (emphasis added). “[T]he success of the confinement is not an integral part of the test.” Berry, 668 So.2d at 970 (emphasis added).
The majority also states that its decision is guided by this court’s recent decision in Lewis, which presents a closer factual situation to this case than does Berry. However, I conclude that, regardless of the factual similarity, this court incorrectly decided Lewis by not conducting a prong-by-prong analysis as the supreme court did in Berry.
In Lewis, the defendant entered a check cashing store and told the manager that he was robbing the store. The defendant pulled a gun, took the manager to a bathroom, handcuffed her, and threatened to shoot her. The defendant went to lock the front door, and while he stepped away, the manager hit a silent panic button. As the defendant attempted to gain access to the safe, another woman came to the store. The defendant opened the door for her, relocked the door, told the woman that it was a hold-up, and ordered her to lie on the floor next to the manager. The police arrived shortly thereafter and telephoned the store. The defendant wanted the manager to tell the police that the situation was normal, but he could remove only one handcuff from her. So he told the second woman to go to the police and tell them everything was fine. The woman ran out *550 of the store and told police that the defendant was inside with a gun and had the manager in handcuffs. Officers surrounded the building. The defendant ran into the bathroom and escaped by climbing through the ceiling. When the manager heard a crash from the bathroom, she ran out of the store. The police later found the defendant hiding in a neighboring building. He was convicted of several charges, including attempted robbery with a firearm and armed kidnapping with a firearm.
This court reversed the defendant’s kidnapping conviction. In doing so, this court quoted Faison’s three-prong test, but did not conduct a prong-by-prong analysis. Instead, this court reviewed various cases and issued two rules of law separate from the three-prong test. The first rule is: “The act of moving a victim from one room to another during the case is insufficient to establish a kidnapping separate and distinct from the robbery.” Lewis, 50 So.3d at 88 (citing Wilcher v. State, 647 So.2d 1013 (Fla. 4th DCA 1994), and Walker v. State, 604 So.2d 475 (Fla.1992)). The second rule is: “[A] kidnapping charge cannot stand where the victim’s confinement ceases when the accompanying crime ends.” Lewis, 50 So.3d at 88 (citing Russell v. State, 874 So.2d 1256 (Fla. 4th DCA 2004), and Berry). This court then reversed the defendant’s kidnapping conviction based on the following reasoning:
In the present case, the appellant ordered [the manager] into a different room of the store, the bathroom, so that the appellant could lock the front door. Shortly thereafter, the appellant ordered [the manager] to lie on the floor by the safe. The appellant eventually also unlocked one of the handcuffs on [the manager] so that neither victim was bound or barricaded when the appellant fled the store. [The manager’s] confinement “ceased naturally” with the end of the robbery, as she was free to exit the store when the appellant climbed through the bathroom ceiling.
In conclusion, the evidence as it related to the kidnapping did not satisfy the “test enunciated in Faison and the trial court erred in denying the motion for judgment of acquittal on the kidnapping charge.” Russell, 874 So.2d at 1259.
Lewis, 50 So.3d at 88.
Respectfully, if this court had conducted a prong-by-prong analysis in Lewis, then the result in Lewis may have been different. Applying Faison’s first prong to Lewis, the confinement accompanying the robbery there was not slight, inconsequential, and merely incidental to the robbery. That is because the confinement did not cease “naturally” with the robbery. Berry, 668 So.2d at 969. Rather, the confinement ceased “unnaturally” because the police interrupted the robber, causing him to partially unlock the handcuffs on the manager before he fled.
The handcuffing of the manager in Lewis also satisfies Faison’s second prong. The confinement was not of a sort inherent in a robbery because it was not necessary to handcuff the manager to commit the robbery. Indeed, the defendant would have been convicted of attempted robbery even in the absence of this evidence.
Regarding Faison’s third prong, it is clear that the handcuffing of the manager in Lewis was a confinement with independent significance from the robbery in that it made the robbery substantially easier of commission. The fact that the police interrupted the robber, causing him to partially unlock the handcuffs, does not negate this finding as to the robber’s intent for the initial confinement. As the court stated in Berry: “ ‘The question is whether the initial confinement was intended to [make the other crime substantially easier *551 of commission or substantially lessens the risk of detection].’” 668 So.2d at 970 (quoting Ferguson, 533 So.2d at 764) (emphasis added). “[T]he success of the confinement is not an integral part of the test.” Berry, 668 So.2d at 970 (emphasis added).
As this court did in Lewis, the majority in this case appears to have added another new rule separate from Faison’s three-prong test. Whereas the second rule issued in Lewis is that “a kidnapping charge cannot stand where the victim’s confinement ceases when the accompanying crime ends,” 50 So.3d at 88 (emphasis added), the majority in this case now appears to also hold that a kidnapping charge cannot stand where the victim’s confinement ceases before the accompanying crime ends. See majority op. at 547 (“[B]ecause the confinement ceased prior to completion of the robbery, the evidence does not support an independent kidnapping conviction.”) (emphasis added). I see no authority in the supreme court’s precedent for the majority’s new rule or the two rules which this court issued in Lewis.
The majority in this case also seeks to avoid the supreme court’s plain language in Berry that Faison’s first prong, when applied to a robbery, may be determined based on whether the confinement accompanying the robbery would “cease naturally ” with the robbery. Berry, 668 So.2d at 969 (emphasis added). According to the majority, “the operable word is ‘cease,’ whether it is natural or not,” and “[wjhether that cessation was natural is of no import.” Majority op. at 546 and 547. Again, I see no authority in the supreme court’s precedent suggesting that its use of the word “naturally” is of no import. We are bound to give effect to the word “naturally” rather than discarding its plain meaning. Applying the plain meaning here, the confinement did not cease “naturally” with the robbery. Rather, the confinement ceased “unnaturally” because the victim’s sister and her friend, and then the police, interrupted the robbers, causing them to untie the victim and take the pillow case off his head.
In sum, Faison’s three-prong test still controls and should be applied with a prong-by-prong analysis as the supreme court did in Berry. Having applied the three-prong test with a prong-by-prong analysis here, I conclude that competent, substantial evidence exists to find that the robbers’ confinement of the victim here amounted to a kidnapping. We should affirm the defendant’s kidnapping conviction, and we should recede en banc from Lewis to the extent Lewis issued two rules which are separate from Faison’s three-prong test.